IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| ALAN HOUGHTON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 5:11-1000** |
| | ) | |
| JOEL ZIGLER, Warden, | ) | |
| | ) | |
| **Defendant.** | ) | |

PROPOSED FINDINGS AND RECOMMENDATION

Pending is Plaintiff's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a

Person in State or Federal Custody.[1] (Document No. 1.) Plaintiff names Warden Joel Ziegler as the

Defendant. Plaintiff complains that the BOP is violating his constitutional rights by failing to provide

him with adequate medical care. (Id., pp. 3 - 5.) Plaintiff alleges that he suffers from the following

medical conditions: "(1) Morbid obesity; (2) Perth's disease; (3) Degenerative joint disease requiring

a hip replacement; (4) Osteoarthritis (degeneration of joint-cartilage); (5) Asthma; (6) Sleep apnea;

(7) Carpel Tunnel disease in both wrists; (8) High blood pressure; (9) Insomnia and severe leg edema;

and (10) Severe chronic pain." (Id., p. 3.) Plaintiff contends that "[d]ue to these conditions, the

sentencing court recommended [Plaintiff] be designated to a BOP Medical Facility." (Id.) Plaintiff

acknowledges that he was placed at FMC Butner from September 2, 2010, until October 5, 2011. (Id.)

Plaintiff states that he arrived at FCI Beckley on October 14, 2011. (Id.) Plaintiff admits that he

received adequate medical care at FMC Butner, but complains that he is receiving inadequate medical

care at FCI Beckley. (Id.) Plaintiff explains that BOP physicians at FMC Butner determined that the

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to
a less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

following items were medically necessary: "(1) 160 mg per day of OxyCodone; (2) a pressure reduction mattress; (3) an egg crate mattress overlay; (4) a bed wedge; (5) a foam wheelchair cushion; (6) a cane; and (7) an extra pillow for positioning of the left hip while sleeping." (Id.) Plaintiff states that "since arriving at the BOP's Beckley facility, [he] has been denied all of the above medically necessary treatments and devices, simply because the BOP unilaterally decided to transfer [him] to the Beckley Prison Camp." (Id.) Plaintiff alleges that "[w]hen asked why he was being denied the OxyCodone prescribed by BOP physicians at the Butner Medical Center, Beckley medical staff stated that the Beckley Institution does not allow OxyCodone to be given in the facility, and does not have most of the medical devices available." (Id., p. 4.) Plaintiff contends that OxyCodone is medically necessary because he suffers from severe pain. (Id.) Plaintiff, therefore, contends that the BOP acted with deliberate indifference by transferring Plaintiff to FCI Beckley because the "BOP knew, or should have known prior to transferring [Plaintiff] to the Beckley facility, that the Beckley facility did not offer the treatment options ordered by BOP physicians at the Butner facility." (Id.)

Plaintiff alleges that after "recognizing their facility's inability to treat [Plaintiff]," medical staff at FCI Beckley requested Plaintiff's "transfer to a higher care level institution" on November 30, 2011. (Id., pp. 4 - 5.) Plaintiff states that on December 7, 2011, "Dr. Allen, the Chief of Health Programs in Washington, D.C., denied the transfer, ordering FCI Beckley to 'please manage locally.'" (Id., p. 5.) Plaintiff, therefore, contends that "Dr. Allen's action furthers the BOP's showing of depraved indifference." (Id.) As relief, Plaintiff requests the following: (1) "transfer [Plaintiff] to a BOP facility that is authorized to provide the medically necessary treatment ordered by [his] previous BOP doctors;" (2) "the BOP to authorize the FPC Beckley Health Services Department to provide the treatment ordered by FMC Butner's physicians;" or (3) "release [Plaintiff] so that he can obtain the necessary treatment from the private physicians he utilized prior to his incarceration." (Id.,

2

pp. 5 - 6.)

As Exhibits, Plaintiff attaches the following: (1) A copy of his Request for Administrative Remedy dated November 1, 2011 (Id., pp. 7 - 8.); (2) A copy of Warden Ziegler's response dated December 5, 2011, denying Plaintiff's Request for Administrative Remedy (Id., pp. 9 and 11.); (3) A copy of Plaintiff's Central Office Administrative Remedy Appeal (Id., pp. 10 - 11.); and (4) A copy of an e-mail dated December 8, 2011, from Roger Edwards to Tim Painter stating that the requested transfer of Plaintiff to a Care Level 3 institution was denied (Id., p. 12.).

### STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

### DISCUSSION

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court

must consider whether the inmate is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). The Court finds that Plaintiff claims are not cognizable under Section 2241 because he is challenging the conditions of his confinement. A Section 2241 petition is used to attack the manner in which a sentence is executed, e.g., time credit calculations. Thus, a Section 2241 petition is appropriate where the prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973); Ajaj v. Smith, 108 Fed.Appx. 743, 744 (4th Cir. 2004). Therefore, the undersigned will construe and consider Plaintiff's claims under Bivens.

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States

_____

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights.

4

Supreme Court has held that an inmate may name a federal officer in an individual capacity as a

defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson</u>

<u>v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, <u>Bivens</u> claims are not

actionable against the United States, federal agencies, or public officials acting in their official

capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994);

<u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reingold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir.

1999).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust

available administrative remedies prior to filing civil actions though the administrative process may

not afford them the relief they might obtain through civil proceedings.[3] <u>Woodford v. Ngo</u>, 548 U.S.

81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983,

152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all

---

*Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears

to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

[A]n inmate's failure to exhaust administrative remedies is an affirmative defense to

be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is

8

unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., §

542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to

General Counsel on a BP-11 form within 30 days after the Regional Director signed the response.

Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The

administrative process is exhausted when General Counsel issues a ruling on the inmate's final

appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission

may be rejected at any level for failure to comply with the administrative remedy requirements or if

the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be

provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request

or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit,

the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff acknowledges that he did not exhaust his administrative remedies.

(Document No. 1, p. 2.) Plaintiff contends that he is excused from exhaustion because (1) filing

additional administrative remedies would be "fruitless," and (2) Plaintiff will be "subjected to

additional pain and suffering." The United States Supreme Court, however, has stated that it "will

not read futility or other exceptions into statutory exhaustion requirements. . . ."[4] Booth v. Churner,

---

[4]  Plaintiff appears to rely on the exhaustion standard for Section 2241 Petitions. Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy).

532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). As stated above, the plain language of the statute requires that only "available" administrative remedies be exhausted.  Thus, the mandatory exhaustion requirement may be excused if the administrative remedy process is rendered unavailable. Plaintiff, however, acknowledges that "he has filed administrative remedy requests and is currently awaiting a response from BOP Central Office on his final internal appeal." Plaintiff merely indicates that he wishes to proceed with the instant action because he anticipates that his administrative remedy appeal will be unsuccessful. Based on the foregoing, the undersigned finds that Plaintiff has failed to allege or demonstrate that the administrative remedies process is unavailable. The undersigned, therefore, recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 22, 2011.

R. Clarke VanDervort
United States Magistrate Judge